## PHILLIPS v. GROSSMAN.

### (Supreme Court, Appellate Term.   May 27, 1912.)

TAXATION (§ 533,* New, vol. 11 Key-No. Series)—TRANSFERS OF STOCK—PAY-
MENT OF TAX—STATUTES—"AGREEMENT TO SELL STOCK."

A contract for the sale of corporate stock which provides for payment
in weekly installments, for the transfer to the buyer of a part of the stock
when the payments aggregated a specified sum, and for the transfer of
the remainder on the payment of the full price and which declares that
during the continuance of the agreement, and, until there shall be a de-
fault for five days, the stock shall be indorsed in blank and placed in
escrow to be held in accordance with the agreement, and that during the
continuance thereof the buyer shall have no power to exercise any of the
rights of a stockholder, is an agreement to sell stock within Tax Law
(Consol. Laws 1909, c. 60) § 270, as amended by Laws 1910, c. 38, and
Laws 1911, c. 352, and section 278, imposing a tax. on agreements to sell
stock, and, when the stock was indorsed in blank and delivered to the
third person, the tax became immediately due, and the seller, failing to
pay the tax, may not, on the buyer relying on the statute, sue on the con-
tract.

[For other definitions, see Words and Phrases, vol. 1, pp. 285, 286.]

Appeal from Municipal Court, Borough of Manhattan, Third Dis-
trict.

Action by David B. Phillips against Emil Grossman. From a judg-
ment of the Municipal Court of the City of New York for plaintiff
after a trial by the court without a jury, defendant appeals. Re-
versed, and complaint dismissed.

Argued May term, 1912, before SEABURY, LEHMAN, and
PAGE, JJ.

Wallenstein & Armstrong, for appellant.
Leo Schafran, for respondent.

PAGE, J.   On the 26th day of July, 1911, the plaintiff and de-
fendant entered into a written agreement for the sale by the plain-
tiff to the defendant of 52 shares of the capital stock of the Broad-
way Packing Box Company and 26 shares of the capital stock of
the Gotham Nail Company for the sum of $2,717, payable in weekly
installments of $35 on Monday of each week, commencing on the
31st day of July, 1911.   Upon each payment of installments aggre-
gating $500, 10 shares of the Box Company stock and five shares of
the Nail Company were to be transferred to the defendant.   When
the total amount was paid, the balance remaining should be transfer-
red.   It was. further agreed that during the continuance of the agree-
ment, and until there should be a default for five days, the said
shares of stock should be indorsed in blank and delivered over unto
Leo Schafran in escrow, who should hold the same in accordance with
the terms of the agreement, and that, during the continuance of the
agreement, the defendant was to have no power or authority to vote
upon the said shares of stock, or to exercise any of the rights or

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

powers of a stockholder in either of the companies. Pursuant to the terms of this agreement, the stock certificates were indorsed in blank and delivered to Leo Schafran. Defendant. defaulted in the payment of the installments due on January 29, February 5, and February 12, 1912.

Plaintiff brings this action to recover $105, the amount of said three installments, with interest. The answer denies the allegation of performance, other than the delivery of the stock to Schafran, and pleads as a defense failure to affix the stamps required by the Tax Law. When the agreement was offered in evidence, the defendant made the same objection to its reception, and it was admitted over defendant's exception. It was conceded on the trial that no stamps were placed upon either the agreement or the certificates of stock which had been indorsed in blank and delivered to Mr. Schafran. The Tax Law imposes a tax—

"on all sales, or agreements to sell, or memoranda of sales, of stock, and upon any and all deliveries, or transfers, of stock or shares of stock in any domestic or foreign association, company or corporation * * * whether made upon or shown by the books of the association, company or corporation, or by any assignment in blank, or by any delivery, or by any paper, agreement or memorandum, or other evidence, of transfer or sale, whether intermediate or final, and whether investing the holder with the beneficial interest in or title to said stock, or merely with the possession or use thereof for any purpose, or to secure the future payment of money, or the future transfer of any stock. * * * The payment of such tax shall be denoted by an adhesive stamp or stamps affixed as follows. * * * In cases of agreements to sell, or where the transfer is by delivery of the certificates assigned in blank, there shall be made and delivered by the seller to the buyer a bill or memorandum of such sale, to which the stamps provided for in this article shall be affixed. * * *" Chapter 60, Consol. Laws 1909, § 270, as amended Laws 1910, c. 38, and Laws 1911, c. 352.

And further:

"No transfer of stock * * * on which a tax is imposed by this article, and which tax is not paid at the time of the said transfer, shall be made the basis of any action, or legal proceedings, nor shall proof thereof be offered or received in evidence in any court in this state." Section 278.

It is very evident that the contract in the case at bar was an agreement to sell stock within the terms of the Tax Law. The intermediate. transfer of the stock indorsed in blank to Schafran was for the purpose of giving him possession thereof to secure the future payment of money upon the payment of which a future transfer of the stock was to be made. Therefore the tax became immediately due and payable by the plaintiff, and the stamps required by the Tax Law should have been affixed by him to the agreement to sell. Having failed to do this, and the defendant having affirmatively pleaded this failure to comply with the statute as a defense, the agreement could not be made a basis of an action, nor should it have been received in evidence. Bean v. Flint, 138 App. Div. 846, 123 N. Y. Supp. 385; Life Ins. Co. v. Nicholas, 144 App. Div. 95, 128 N. Y. Supp. 902; Sheridan v. Tucker, 145 App. Div. 145, 129 N. Y. Supp. 18. The respondent contends that the delivery to Schafran was not a transfer, and, until a transfer was made, no tax can be due. The case relied

upon by him does not sustain his contention (People ex rel. Hatch v. Reardon, 184 N. Y. 431, 449, 77 N. E. 970, 975, 8 L. R. A. [N. S.] 314, 112 Am. St. Rep. 628, 6 Ann. Cas. 515), as the court there said:

"It is the sale alone that gives rise to the tax, which is imposed through the command of the law to the seller to pay the tax when the contract is made."

That the tax must be paid at the time the agreement to sell is made, and may not thereafter be made, is clearly shown in Mutual Life Ins. Co. v. Nicholas, supra, in which the court pointed out the distinction between the Stock Transfer Tax Law and the Mortgage Tax Law, holding that a mortgage could be recorded and the tax paid at any time before this action was brought to enforce it, while in the Stock Transfer Tax Law the tax must be paid immediately. The opinion of the Attorney General of March 9, 1911, cited by respondent, was prior to the amendment of 1911, and has no present value.

The judgment must be reversed, with costs to the appellant, and the complaint dismissed, with costs. All concur.